# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

## EON CORP. IP HOLDINGS LLC,
*Plaintiff-Appellant,*

v.

## CISCO SYSTEMS, INC., HTC AMERICA, INC., UNITED STATES CELLULAR CORPORATION, SPRINT SPECTRUM L.P., MOTOROLA SOLUTIONS, INC., AND MOTOROLA MOBILITY LLC,
*Defendants-Appellees.*

_____

2014-1496
_____

Appeal from the United States District Court for the
Northern District of California in No. 3:12-cv-01011-JST,
Judge Jon S. Tigar.

_____

## INITIAL BRIEF FOR DEFENDANTS-APPELLEES CISCO SYSTEMS, INC., HTC AMERICA, INC., UNITED STATES CELLULAR CORPORATION, SPRINT SPECTRUM L.P., MOTOROLA SOLUTIONS, INC., AND MOTOROLA MOBILITY LLC

_____

*Counsel for Defendant-Appellee Cisco Systems, Inc.*

L. Norwood Jameson
Matthew S. Yungwirth
Alison Haddock Hutton
John R. Gibson
**DUANE MORRIS LLP**
1075 Peachtree Street, Suite 2000
Atlanta, Georgia  30309
Telephone:  404.253.6900
Facsimile:  404.253.6901

Joseph A. Powers
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone:  215.979.1842
Facsimile:  215.689.3797

**Dated:  November 3, 2014**

*Counsel for Defendant/Appellee HTC America, Inc.*

Fred I. Williams
**AKIN, GUMP, STRAUSS, HAUER &
FELD, LLP**
Suite 1900
300 West Sixth Street
Austin, TX 78701
Telephone:  512.499.6200
Facsimile: 512.499.6290

Eric Joseph Klein
Todd E. Landis
**AKIN, GUMP, STRAUSS, HAUER &
FELD, LLP**
Suite 4100
1700 Pacific Avenue
Dallas, TX 75201
Telephone:  214.969.2800
Facsimile: 214.969.4343

*Counsel for Defendant/Appellee U.S. Cellular Corporation*

Ryan C. Morris
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: 202.736-8000
Facsimile:  202.736.8711

Richard John O'Brien
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone: 312.853-7000
Facsimile:  312.853.7036

Bryan K. Anderson
Ashish Nagdev
**SIDLEY AUSTIN LLP**
1001 Page Mill Rd., Bldg. 1
Palo Alto, CA 94304
Telephone: 650.565.7000
Facsimile:  650.565.7100

*Counsel for Defendant/Appellee Sprint Spectrum L.P.*

John J. Cotter
V. Raman Bharatula
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone:  617.261.3178
Facsimile:  617.261.3175

*Counsel for Defendants-Appellees*
*Motorola Solutions, Inc. and Motorola Mobility LLC*

Steven Moore
**KILPATRICK TOWNSEND & STOCKTON LLP**
Two Embarcadero Center
8th Floor
San Francisco, CA 94111
Telephone:  415-273-4741
Facsimile:  415-576-0300

Carl Elliott Sanders
**KILPATRICK TOWNSEND & STOCKTON LLP**
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone:  336-607-7300
Facsimile: 336-607-7500

Christopher Schenck
**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 Fifth Avenue
Seattle, WA 98101
Telephone:  206-467-9600
Facsimile:  206-623-6793

Frederick Lee Whitmer
**KILPATRICK TOWNSEND & STOCKTON LLP**
1114 Avenue of the Americas
21st Floor
New York, NY 10036
Telephone:  212-775-8773
Facsimile:  212-775-8800

## <u>Cisco Systems, Inc.'s Certificate of Interest</u>

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4(a), counsel for Defendant-Appellee Cisco Systems, Inc. hereby certifies the following:

1. The full name of every party or amicus represented by us is:

   Cisco Systems, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

   Cisco Systems, Inc.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of any party represented by us are:

   None

4. The names of all law firms and the partners and associates that appeared for the parties now represented by us in trial court or are expected to appear in this Court are:

   L. Norwood Jameson, Matthew S. Yungwirth, Joseph A. Powers, Alison Haddock Hutton, John R. Gibson, David C. Dotson, Stephanie A. Hansen, and Rick Seabolt

   **DUANE MORRIS LLP**

## HTC America, Inc.'s Certificate of Interest

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4(a), counsel for Defendant-Appellee HTC America, Inc. hereby certifies the following:

5. The full name of every party or amicus represented by us is:

   HTC America, Inc.

6. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

   HTC America, Inc.

7. All parent corporations and any publicly held companies that own 10 percent or more of the stock of any party represented by us are:

   HTC Corporation

8. The names of all law firms and the partners and associates that appeared for the parties now represented by us in trial court or are expected to appear in this Court are:

   Fred I. Williams, Todd Eric Landis, Eric J. Klein, Kellie M. Johnson, Jesse Snyder, and Danielle Christine Crockett

   **AKIN GUMP STRAUSS HAUER & FELD LLP**

## <u>United States Cellular Corporation's Certificate of Interest</u>

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4(a), counsel for Defendant-Appellee United States Cellular Corporation hereby certifies the following:

1. The full name of every party or amicus represented by us is:

   United States Cellular Corporation

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

   United States Cellular Corporation

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of any party represented by us are:

   Telephone & Data Systems, Inc.

4. The names of all law firms and the partners and associates that appeared for the parties now represented by us in trial court or are expected to appear in this Court are:

   Bryan K. Anderson, Ryan C. Morris, Richard John O'Brien, Jr., Steven Charles Malin, Ashish Nagdev, David Allen Foley, and Justin B. Weiner

   **SIDLEY AUSTIN LLP**

## **Sprint Spectrum L.P.'s Certificate of Interest**

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4(a), counsel for Defendant-Appellee Sprint Spectrum L.P. hereby certifies the following:

1. The full name of every party or amicus represented by us is:

   Sprint Spectrum L.P.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

   Sprint Spectrum L.P.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of any party represented by us are:

   Sprint Spectrum L.P. is indirectly owned by Sprint Communications, Inc. Sprint Communications, Inc. is a private company and a wholly-owned subsidiary of Sprint Corporation. Sprint Corporation is a publicly-traded corporation and more than 10% of Sprint Corporation's stock is owned by SoftBank Corporation. SoftBank Corporation is also a publicly-traded corporation.

4. The names of all law firms and the partners and associates that appeared for the parties now represented by us in trial court or are expected to appear in this Court are:

   John J. Cotter, Christopher H. Centurelli, V. Raman Bharatula, Andrea B. Reed, Michael E. Zeliger, and George S. Haight

   **K&L GATES LLP**

   Robert William Weber

   **SMITH WEBER LLP**

iv

## **Motorola Mobility LLC's and Motorola Solutions, Inc.'s Certificate of Interest**

Pursuant to Federal Circuit Rules 27(a)(7) and 47.4(a), counsel for Defendant-Appellees Motorola Mobility LLC and Motorola Solutions, Inc. hereby certify the following:

5.  The full name of every party or amicus represented by us is:

    Motorola Mobility LLC

    Motorola Solutions, Inc.

6.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

    Motorola Mobility LLC

    Zebra Technologies Corporation ("ZTC"), which trades on the NASDAQ stock market under the symbol ZBRA, is the real party in interest for Motorola Solutions, Inc.

7.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of any party represented by us are:

    More than 10% ownership of Motorola Mobility LLC was acquired by Lenovo Group Ltd., which trades on the Hong Kong Stock Exchange under the stock code 992.

    The following entities own more than 5% of ZTC's common stock:
    - Neuberger Berman Group LLC;
    - The Vanguard Group, Inc.; and
    - Capital Research Global Investors

8.  The names of all law firms and the partners and associates that appeared for the parties now represented by us in trial court or are expected to appear in this Court are:

    Steven D. Moore, Frederick L. Whitmer, Carl E. Sanders, Chris Schenck, Bret Winterle, Caroline Wray, Jessica Hannah, Dario Machleidt, James Howard, Bonnie Grant, Byron Chin, and Andrew Rinehart

**KILPATRICK TOWNSEND & STOCKTON LLP**

Eric H. Findlay, Roger B. Craft

**FINDLAY CRAFT PC**

# **Table of Contents**

**Page**

STATEMENT OF RELATED CASES ..................................................1

INTRODUCTION ................................................................2

STATEMENT OF THE ISSUE...................................................6

STATEMENT OF THE FACTS ...............................................6

I.    The '491 Patent Claims Require a Default Path A and a Backup Path B.......7

    A.    Use of Path B is Conditioned on Path A Being Unavailable ................7

    B.    The Network Hub Switching Center Handles Switching Functions Within the Network ...........................................................12

II.    EON Does Not Allege Joint Infringement ....................................14

III.    The District Court Issued A Revised Claim Construction at EON's Request But Still Granted Summary Judgment to Appellees .....................................16

    A.    EON Failed to Propose a Construction for the Disputed Claim Terms16

        1.    EON Agreed That Path B is Used Only if Path A is Unavailable16

            (a)    The "Transferring … If" Terms in System Claims 1, 12 and 13 are Present Tense and are Agnostic to User Intent18

            (b)    The "If Said" Terms in Method Claims 5 and 17 Include Both a Binary Limitation and a Conditional Limitation 20

        2.    The "Network Hub Switching Center" Is Part of the Claimed Network.....................................................................20

    B.    The District Court Reversed its Holding that the Switching Means Term is Indefinite Because EON Argued that the Claimed Subscriber Unit Selects Path A or Path B ...........................................22

    C.    The District Court Granted Summary Judgment Because the Accused Mobile Handsets Do Not Switch from Path A to Path B Based on the

Required Condition and Because the Accused Third Party Web Servers Are Not Network Hub Switching Centers ............................23

1.  The District Court Found that the Accused Networks Do Not Meet the Conditional "If" Limitations......................................24

    (a)  Network/System Claims 1, 12 and 13 (and Their Dependents) Were Not Infringed Because Use of the Accused Modems is Not Conditioned on Unavailability of the Accused Cellular Network ...................................25

    (b)  Method Claims 5 and 17 (and Their Dependents) Were Not Infringed Because There is No Direct Infringer and the Conditional Requirement is Not Met by the User ....26

2.  The District Court Found that Web Servers Are Not Network Hub Switching Centers ...........................................................28

3.  The District Court Found that EON's Doctrine of Equivalents Theories Failed to Address the Conditional Requirement........29

SUMMARY OF ARGUMENT .............................................................30

STANDARD OF REVIEW .................................................................31

ARGUMENT ....................................................................................33

I.   The District Court's Judgment in Favor of Appellees Should Be Upheld Because the Accused Instrumentalities Do Not Meet the "Conditional" Limitation in Any of the Asserted Claims, Either Literally or Under the Doctrine of Equivalents ................................................................33

    A.  The District Court Correctly Concluded that Path B is "Conditioned" on the Present Unavailability of Path A ............................33

    B.  The District Court Properly Determined that the Accused Systems Do Not Infringe the '491 Patent's Claims ...............................35

    C.  EON's User-Dependent Infringement Theories Are Not Supported By the Claims...........................................................................37

1.      The Claims and Specification Provide No Role for a User to Select Path B ..............................................................................40

2.      The District Court Properly Analogized this Case to *American CalcAR v. American Honda* ......................................................42

3.      EON Has Not Identified Any Reason that the Method Claims Should Be Treated Differently with Respect to the Role of the User ..............................................................................................44

4.      The Case Law Does Not Support EON's User-Dependent Theories..........................................................................................45

D.    Even When Allowing for the User Role Proposed by EON, EON's Infringement Theories Fail for the Accused Networks......................47

II.    EON's Argument that the District Court Failed to Consider or Ignored EON's Evidence is Contradicted By the Record............................................48

III.   There Is No Direct Infringer Under EON's User-Dependent Theories ........51

IV.    EON's Doctrine of Equivalents Arguments Fail to Address the Conditional "If" Limitations of the Claims ....................................................................54

V.     The District Court Correctly Construed the Network Hub Switching Center Term........................................................................................................56

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................61

CERTIFICATE OF SERVICE .............................................................................65

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS .........67

## **Table of Authorities**

**Cases**

*BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) ..........54

*Charles Mach. Works, Inc. v. Vermeer Mfg. Co.,* 723 F.3d 1376 (Fed. Cir. 2013) ...................................................................................................31

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308 (Fed. Cir. 2009)...................................................................................31

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1445 (Fed. Cir. 1998) .........................31

*Deere & Co. v. Bush Hog, LLC,* 703 F.3d 1349 (Fed. Cir. 2012) ..........................51

*Fowle v. C & C Cola*, 868 F.2d 59 (3rd Cir. 1989) ........................................... 49-50

*Harris v. Extendicare Homes, Inc*., 829 F. Supp. 2d 1023 (W.D. Wash. 2011) ...................................................................................................49

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004)...................................................................................31

*King Tuna, Inc. v. Anova Food, Inc.,* 2009 U.S. Dist. LEXIS 22901, 2009 WL 650732 (C.D. Cal. Mar. 10, 2009)...............................................49

*Leever v. Carson City*, 360 F.3d 1014 (9th Cir. 2004) ...........................................31

*Limelight Networks, Inc. v. Akamai Techs., Inc.* 134 S. Ct. 2111 (2014)........................................................ 5, 10-11, 52

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014) ..........31

*Mirror Worlds, LLC v. Apple Inc.,* 692 F.3d 1351 (Fed. Cir. 2012) .......................51

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) .............52, 54

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ................................. Passim

*Planet Bingo, LLC v. Gametech Int'l, Inc.,* 472 F.3d 1338 (Fed. Cir. 2006) ..........50

*Ridgel v. United States*, No. SACV 12-0071, 2013 U.S. Dist. LEXIS 72131 (C.D. Cal. May 21, 2013) ...................................................................49

*Romero v. Nev. Dep't of Corr.,* No. 2:08-cv-808, 2013 U.S. Dist. LEXIS 168736 (D. Nev. Nov. 27, 2013) .......................................................................48

*Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202 (D. Nev. 2008) ............................................................................................................49

*Ultratec, Inc. v. Sorenson Commc'ns*, No. 13-cv-346-bbc, 2014 U.S. Dist. LEXIS 139776 (W.D. Wis. Sept. 29, 2014) .......................................................54

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996).............32, 56

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17 (1997)................55

*Wilson Sporting Goods, Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322 (Fed. Cir. 2006) ...............................................................................................61

# **Table of Abbreviations**

## **Parties**

| | |
|---|---|
| EON | Plaintiff-Appellant EON Corp. IP Holdings |
| Cisco | Defendant-Appellee Cisco Systems, Inc. |
| HTC | Defendant-Appellee HTC America, Inc. |
| U.S. Cellular | Defendant-Appellee United States Cellular Corporation |
| Sprint | Defendant-Appellee Sprint Spectrum L.P. |
| MSI | Defendant-Appellee Motorola Solutions, Inc. |
| Motorola Mobility | Defendant-Appellee Motorola Mobility LLC |
| Appellees | Cisco, HTC, U.S. Cellular, Sprint, MSI, and Motorola Mobility |

## **Patents**

| | |
|---|---|
| The '491 Patent | U.S. Patent No. 5,592,491 |
| The '101 Patent | U.S. Patent No. 5,388,101 |
| Patent-in-Suit | The '491 Patent |

## **Defined Terms**

| | |
|---|---|
| A_ | Joint Appendix at page(s)____ |
| district court | The Northern District of California |
| EONBr__ | EON's Opening Brief at page(s)____ |
| NHSC | Network Hub Switching Center |
| PSTN | Public Switched Telephone Network |

Claim Construction          Revised Order Construing and Determining Validity of
Order                               Claims of United States Patent No. 5,592,491 (A36-66)

Summary Judgment        Order Granting Defendants' Motion for Summary
Order                              Judgment of Noninfringement (A11-31)

## STATEMENT OF RELATED CASES

This action is an appeal from the United States District Court for the Northern District of California in No. 3:12-cv-01011, Judge Jon S. Tigar. There have been no other appeals in this case before this or any other appellate court.

There are other cases brought by EON that will directly affect or will be directly affected by this Court's decision in the pending appeal because they involve the same Patent-in-Suit. Those cases are: *EON Corp. IP Holdings, LLC v. Landis + Gyr Inc.*, *et al.*, No. 6:11-cv-00317 (E.D. Tex.); *EON Corp. IP Holdings, LLC v. Pantech Wireless, Inc.*, No. 6:12-cv-00942 (E.D. Tex.); *EON Corp. IP Holdings, LLC v. Apple Inc.*, No. 6:12-cv-00943 (E.D. Tex.);[1] and *EON Corp. IP Holdings, LLC v. Asustek Computer Inc.*, No. 6:12-cv-00944 (E.D. Tex.). EON has also dismissed without prejudice a case brought against AT&T Mobility, LLC, AT&T Mobility Puerto Rico LLC, and AT&T Inc. that was previously pending in the District of Puerto Rico and that involved the same Patent-in-Suit and the same accused instrumentalities (Cisco networking components used in AT&T's cellular

---

[1] On September, 11, 2014, this Court issued an opinion granting Apple's petition for mandamus and ordered the case to be transferred to the Northern District of California. *See In re Apple, Inc.*, 2014-143, Dkt. 15 (Fed. Cir. Sept. 11, 2014). On October 10, 2014, EON filed a petition for panel rehearing and rehearing en banc of this Court's decision to grant Apple's petition and order transfer. The Eastern District of Texas has stayed the case pending final resolution of Apple's mandamus petition. *EON Corp. IP Holdings, LLC v. Apple Inc.*, No. 6:12-cv-00943, Dkt. 57 (E.D. Tex. Sept. 15, 2014).

network and Cisco femtocells sold by AT&T to its customers) which, if refiled by EON, will be directly affected by this Court's decision. *See EON Corp. IP Holdings, LLC v. AT&T Mobility LLC, et al.*, No. 3:11-cv-01555 (D.P.R.).

## INTRODUCTION

The district court's summary judgment of noninfringement should be affirmed because it is undisputed that a user cannot force the accused mobile handsets to only communicate over a modem "Path B" if they are unable to communicate over a cellular "Path A," and EON does not credibly dispute that the claim terms require that condition.

That condition is the heart of the '491 Patent, which discloses a particular solution for a "subscriber unit" that is unable to communicate over a two-way network. The '491 Patent discloses an ***alternative*** "**Path B**" communication path to the network through a "modem" if—but only if—the ***default*** **"Path A"** or primary communications path to the network is not available. The subscriber unit's conditional use of Path B resulting from its inability to communicate with the network through Path A is referred to by the parties as the "conditional 'if'" requirement of the asserted claims.

EON contends that claimed Path A is a cellular network, while Path B uses a Wi-Fi access point, Mobile Hotspot,[2] or femtocell as the claimed "modem." EONBr10.  EON accuses "dual mode" mobile handsets (i.e., smartphones or other cellular phones) with both cellular and Wi-Fi functionalities as the claimed "subscriber units."  *Id.*

Unlike the subscriber units claimed by the '491 Patent, however, the accused mobile handsets do ***not*** prefer Path A and use an accused Path B only if Path A is unavailable.  Quite the opposite, the handsets in the accused systems and methods prefer Path B and will use Path B ***regardless of the availability of Path A***.  Accordingly, the district court correctly entered summary judgment of noninfringement.

Unable to present any evidence that the mobile handsets used in the accused systems and methods operate like those claimed by the '491 Patent, EON asserts that a user him or herself creates an infringing system (or performs an infringing method) when the user:  (i) perceives a need for an alternative communication path because, for instance, cellular network coverage is poor or absent, and (ii) creates that communication path by installing a Wi-Fi access point or femtocell and

---

[2] Paths using Wi-Fi access points and Mobile Hotspots are addressed together under the umbrella of "Wi-Fi" because handsets connect to Mobile Hotspots using Wi-Fi.

associating a handset with that Wi-Fi access point or femtocell.  This theory of infringement is unsupported by the '491 Patent's claims and the intrinsic record.

First, EON's infringement scenarios depend on a user's perception that the cellular network connection is inadequate at some time *before* Path B is even in existence and thus do not satisfy the limitations of the '491 Patent's claims for this reason alone.  The claims require a network that includes both a Path A and a Path B, and a "subscriber unit" that can use Path B based on the present condition of Path A's unavailability.  In contrast, under EON's infringement theory, Path B does not exist when the user perceives a need for a Path B because EON's theory is predicated on the act of a "user first turning on [Path B] and initializing a connection."  EONBr24; *see also* EONBr58-59.

Second, EON's theory of infringement fails because the system created by the user once he or she enables Path B using the accused mobile handsets still does not operate in the manner required by the claims.  Specifically, communications occur through the accused modem Path B (Wi-Fi or femtocell) *whether or not* the cellular Path A is available, but the claims require that those communications occur *only if* cellular Path A is not available.  The mobile handsets used in the accused systems and methods always use Path B because Path B is available to the subscriber unit, not because Path A may happen to be unavailable, and not because that mobile handset is unable to communicate through Path A.

4

Third, the district court also correctly entered summary judgment as to the method claims because EON did not assert—and in fact affirmatively waived—any theory of joint infringement. According to EON, some steps in the asserted method claims are performed by the user (i.e., determining whether a cellular signal is available) and other steps are performed by the network operator (i.e., the steps that involve "transmissions" from network components to the subscriber unit). But EON did not plead and waived any claim of joint infringement. A1061-1062, at 38:19-39:14. EON therefore cannot pursue infringement of method claims under its user-dependent infringement theories. *Limelight Networks, Inc. v. Akamai Techs., Inc.,* 134 S. Ct. 2111, 2117 (2014).

Finally, the district court correctly found that Appellees were entitled to judgment of non-infringement of claims 1, 13 and 17 with respect to all infringement theories that depended on a third party web server constituting the "network hub switching center" for the additional reason that these web servers cannot be the recited NHSC. According to EON, the district court erred by construing the NHSC as being part of a *cellular* network. However, the district court's construction is supported by the '491 Patent's intrinsic record and EON's own arguments before another district court. This is an independent hurdle that EON cannot overcome with respect to claims 1, 13 and 17.

The Court should affirm the district court's grant of summary judgment.

## **STATEMENT OF THE ISSUE**

The issue on appeal is whether the district court correctly found that Appellees did not infringe the '491 Patent where:

(1) EON presented no evidence that the accused systems and methods meet, or can be configured by a user to meet, the conditional "if" limitation of every asserted claim because the accused mobile handsets will prefer and use Path B, if available, regardless of the status of Path A;

(2) a user cannot perform every step of the method claims and EON made no allegations of joint or divided infringement; and

(3) there is no support in the patent for a construction that allows the network hub switching center to be a component outside of the cellular network and therefore EON's infringement theories that depend on a third party web server constituting the "network hub switching center" do not present an issue of material fact with respect to infringement of claims 1, 13 and 17.

## **STATEMENT OF THE FACTS**

EON brought the underlying suit against Appellee Cisco in the Eastern District of Texas on October 22, 2010.  A67-86.  EON amended its Complaint to add HTC, U.S. Cellular, Sprint, MSI, and Motorola Mobility as defendants on January 11, 2011.  A87-135.  The suit was transferred from the Eastern District of Texas to the district court on January 9, 2012.  A136-144.

I.      **The '491 Patent Claims Require a Default Path A and a Backup Path B**

The '491 Patent, which expired on January 7, 2014, is a continuation-in-part of and incorporates by reference the disclosure of the '101 Patent.  A5, 1:3-24. The '101 Patent is directed to an "interactive nationwide data network service communication system."  A1087.  In this nationwide communications system, a "base station repeater cell" communicates wirelessly directly with a "subscriber unit," whereas the subscriber unit communicates indirectly to the base station by communicating wirelessly with a "remote receiver," which relays received communications to the base station.  A1097, 5:1-9.  The base station repeater cell also relays messages received from the "subscriber units" (via the remote receiver) back to a "switching control center" via satellite for transmission outside of the network or to subscriber units in other base station areas.  A1095, 1:5-9.

The '491 Patent addresses a failure of direct communication between the subscriber unit and the base station repeater cell described in the '101 Patent.  A5, 1:18-2:11.  In particular, the '491 Patent proposes an alternative communication path, "Path B," if the cellular communication path, "Path A," is not available.

A.      **Use of Path B is Conditioned on Path A Being Unavailable**

The '491 Patent explains its solution to the loss of Path A (the accused cellular network) in the context of Figure 1, which the inventor states is

7

representative of the "prior art" system disclosed in the '101 Patent.  A2; A6, 3:7-12.

FIG. 1 (Prior Art)



Under certain scenarios in the prior art system disclosed in Figure 1, the subscriber unit is unable to receive transmissions from the local base station repeater cell.  A5, 1:43-53.  As examples, the '491 Patent discloses that the "subscriber unit 12 may be placed in an area which is not yet equipped with or is not covered by a local base station repeater cell.  Additionally, subscriber unit 12 may be located within range of local base station repeater cell 10, but may be positioned, for example, in a basement or other physical location that prevents subscriber unit 12 from receiving transmissions from local base station repeater cell 10 over rf link 14."  A6, 3:22-32.

When one of those (or other) scenarios causes the subscriber unit to be unable to receive signals from a local base station repeater cell, "Path A" is

8

unavailable for use, yet the subscriber unit still needs to communicate with the network.  A6, 3:22-24.  The '491 Patent purports to solve this problem by providing a back-up "Path B" into the network, specifically a back-up path for communications between the subscriber unit and the local base station repeater cell.  *See, e.g.,* A6, 3:33-4:9.  To provide Path B, the '491 Patent discloses (in connection with Figure 2) adding the following components to the network: switching means (13) in the subscriber unit and a modem (22) connected to the base station through the public switched network (25), each highlighted below.



A2-3.  In this manner, a subscriber unit that lost connectivity with the cellular network can still gain access to the cellular network because there is a back-up path through the modem 22 to the base station of the cellular network.  *See, e.g.,* A6, 3:33-4:9.  While not shown in these simplified illustrations, the cellular base

station 10 (like all other base stations in the cellular network) is connected to the switching control center (variously referred to as the "network hub switching center") as described in the incorporated-by-reference '101 Patent. A1096, 4:67-5:12.

The '491 Patent discloses another embodiment of the invention in connection with Figure 3. There, a subscriber unit communicates directly with a "network hub switching center" via a modem because "no base station repeater cell is located proximate to subscriber unit 12." A6, 4:64-5:5. For this reason, the subscriber unit cannot receive rf signals (i.e., cannot use Path A). This can occur, for example, when the subscriber unit is located in a remote area where the cellular provider has not yet built out its network and deployed a base station. *Id.* However, in this embodiment (shown below, again with elements "switching means," "modem" and "public switched network" highlighted) the modem is still adapted to communicate with a local base station repeater cell through a line 34 when the local base station repeater cell becomes available (as shown in Figure 2). A7, 5:42-54.



FIG. 3

The purported object of this embodiment is to provide for two-way communications with the network even where "no local base station repeater cell is located proximate to subscriber unit 12." A7, 5:1-3; *see also id.*, 5:47-54.

According to all claims in the '491 Patent, the use of the modem-facilitated communication path (Path B) is *conditioned* on the unavailability of Path A—that is, Path B only is used if Path A is not available. A7-9. For example, network claim 1 includes the following conditional limitation on the use of Path B, which is repeated with non-material variation in system claims 12 and 13:

> *a modem communicatively coupled to said local subscriber units* and said local base station repeater cell *for transferring* said multiplexed synchronously related digital data messages of variable lengths between said set of local subscriber units and said local base station repeater cell *if said local subscriber units are unable to directly communicate with said local base station repeater cell*.

A7, 6:57-64 (emphasis added).  Similarly, method claim 17 includes the following

conditional language, which is also repeated in method claim 5:

> A method of communicating between a subscriber unit and a network
> hub switching center in a two-communication [sic] system comprising
> the steps of:
>
> ***determining whether a subscriber unit located with a base station
> geographic area associated a said [sic] base station repeater cell is
> receiving a signal from said local base station repeater cell …***
>
> ***if said subscriber unit is receiving a signal*** from said local base
> station repeater cell, performing the steps of … transmitting … via
> said local base station repeater cell …
>
> ***if said subscriber unit is not receiving a signal*** from said local base
> station repeater cell, performing the steps of … transmitting … to said
> modem …

A8-A9, 8:65-9:29 (emphasis added).

## B.    The Network Hub Switching Center Handles Switching Functions Within the Network

Independent claims 1, 13 and 17 include a NHSC as part of the claimed

network, system and method, respectively.  Claim 13 recites that one function of

the NHSC is "routing communications from and to said at least one subscriber

unit" (A8, 8:42-43), but the '491 Patent does not otherwise provide any meaningful

disclosure regarding the NHSC.  However, the NHSC is described in detail in the

parent '101 Patent.

The '101 Patent refers interchangeably to a "network hub switching center,"

to a "hub switching center," to a "switching hub and data processing center," and

12

to a "switching control center." A1100-1101. The '101 Patent explains that the NHSC connects the base stations of the cellular network and allows communications from subscriber units to be switched between different base stations. The '101 Patent discloses that the base station repeater cells are connected to, under the control of, and communicate through the network hub switching center:

> In FIG. 1 … *a set of subscribers at response units 4 communicate over the wireless 218-219 MHz r-f links 5 to either* a set of local remote receivers 20, each connected by a link 21 such as a telephone line to repeater cell 3, *or to a local area base station repeater cell 3*, *one of a set of such repeater stations* in different geographic locations for communicating via satellite 1 *under control of a data and switching control center 2*.

A1096-97, 4:67-5:12; *see* A1096, 4:16-21 ("Thus, the base station data processor locally segregates, accumulates and formats the messages from individual subscribers for re-transmission over the satellite network to a ***switching hub and data processing center*** with the capacity to locate individual subscribers in remote base stations over a nationwide network.") (emphasis added); A1100, 11:58-67 ("said network comprises a plurality of base stations located in different geographic areas, further comprising, data processing facilities in said base station and network for communicating designated digital data messages between local subscriber units in said predetermined base station geographic area and other

subscriber units located in the vicinity of the base stations located in different geographic areas via said ***hub switching center***") (emphasis added).

The '101 Patent also incorporates by reference another U.S. patent application that describes the switch control center as handling the switching functions within a cellular network: "the communication capabilities [of the centralized data and communication control center 2] typically include a switching control center for point-to-point switching ***within the network*** to connect one response unit 4 to one or more other response units in the network." A1097, 5:14-27 (incorporating by reference U.S. Patent Application No. 07/889,626, A1986-A2027 at A2000).

## II.    EON Does Not Allege Joint Infringement

EON alleges that Sprint and U.S. Cellular directly infringe claims 1, 2, 5, 7, 9, 12, 13, 14, 17, 19, and 21 by selling, offering to sell, making and using their wireless communications networks, which EON alleges include both cellular and Wi-Fi (and, for Sprint, femtocell) facilities and related components. A2168-2187; *see also* A2846-2908; A2843-2845.[3]  While EON made a passing reference in its Patent Local Rule 3-1 statement that Sprint's and U.S. Cellular's end-users directly infringe by "making and using" infringing two-way networks, and that Sprint and U.S. Cellular contribute to and induce the direct infringement of those end-users

_____

[3] EON also asserts that Sprint directly infringes claims 16, 18 and 23.

14

(A2176-77), this allegation appears to have been a mere placeholder, because EON's operative claim charts did not include contentions about how the Sprint or U.S. Cellular subscribers "make" the entire infringing network or system or "use" the entire infringing method. A2846-2908.

EON alleges that HTC, Motorola Mobility, and MSI indirectly infringe claims 1, 2, 5, 7, 9, 12, 13, 14, 16, 17, 18, 19, 21, and 23 by providing the infringing "subscriber units" in the form of mobile handsets that are used in the Sprint and U.S. Cellular accused networks, and that MSI indirectly infringes claims 1, 5, 7, 9, 12, 13, 17, 18, 19, 21, and 23 by providing Wi-Fi access points that are the claimed "modem." A2168-2187; *see also* A2909-2944; A3021-3044; A2843-2845. EON's allegations against HTC, Motorola Mobility, and MSI are predicated on the theory that Sprint, U.S. Cellular, or their end users are the direct infringers. *Id.*

EON initially alleged that Cisco indirectly infringed claims 1, 2, 5, 7, 9, 12, 13, 14, 16, 17, 18, 19, 21 and 23 by providing network components that are used in cellular networks, including those of Sprint, U.S. Cellular and AT&T, among others. A2214-2218; A2273-2331; A2945-2981. However, at the expert discovery stage of the case, EON's experts' reports and testimony related only to EON's infringement case against Cisco based on the theory that Cisco femtocells used in the AT&T cellular networks infringe claim 17 of the '491 Patent and its

dependents. A2214-2218; A2332-2345. The Cisco femtocell used in the AT&T cellular network is called the "AT&T 3G Microcell" and is an "in-building mini cell tower" that "carries the 3G signal inside a home or office." A2346-2350; *see also* A2351-2398.

EON does not contend that any of the Appellees are joint infringers with each other or with subscribers who use the accused networks. A2168-2187; A2273-A2331; A2846-2981; A3021-3044. In fact, EON expressly disclaimed a joint infringement theory. A1061-1062, at 38:19-39:14.

## III. The District Court Issued A Revised Claim Construction at EON's Request But Still Granted Summary Judgment to Appellees

### A. EON Failed to Propose a Construction for the Disputed Claim Terms

At claim construction, the parties focused on the meaning of the conditional "if" terms and the NHSC term. Indeed, Appellees identified these disputed terms as potentially case dispositive. A1103-107. Appellees proposed constructions for these terms consistent with the intrinsic record, whereas EON argued no construction was necessary. A1905-A1945 at A1905 and A1912.

#### 1. EON Agreed That Path B is Used Only if Path A is Unavailable

Consistent with the claim language, logic, and the intrinsic record, the district court concluded that, for the system claims, "[t]he 'transferring function' of the modem is conditioned on whether the subscriber unit is unable to directly

16

communicate with the local base station repeater cell." A63; A65. With respect to the method claims, the district court similarly found that the method steps involving the modem "are not performed if the subscriber unit is receiving a signal from said local base station repeater cell" and that "[u]sing the modem to communicate regardless of whether there is signal reception does not fall within the scope of the claim." A63; A65.[4]

With respect to both the system and method claims, EON *embraced* the conditional nature of the patented invention captured in the conditional "if" claim constructions adopted by the district court–that is, that Path B would only be used if Path A became unavailable. A173-74; A1960-1976 at A1971 (prior order from the Eastern District of Texas cited by EON which found that "[t]he *claim language, on its face, sets a condition on the recited function of the modem* … the 'transferring function' is conditioned on whether 'said local subscriber units are unable to directly communicate with said local base station repeater cell) (emphasis added)); A228-231 (agreeing that the "either/or" conditional limitation was evident from the language of the claims).

With respect to the parties' disputes over "whether the scope of the claims extends to a user voluntarily disabling one of the pathways, or to situations in

---

[4] The Eastern District of Texas similarly interpreted the claims in a prior action concerning the '491 Patent. *See generally* A1960-1976; A1979-1985.

which communication was impaired in the past" (A56), the district court addressed the system and method claims separately, as discussed below.

> **(a)      The "Transferring … If" Terms in System Claims 1, 12 and 13 are Present Tense and are Agnostic to User Intent**

EON argued during claim construction that the "condition" described in the claims could include both (i) situations in which the condition of being unable to communicate exists and (ii) situations in which the inability to communicate *ever* existed.  A305-306.  In other words, EON argued that the claim conditions were met if at any time in the past a user observed that Path A was unavailable, and at some later time sought out a Path B solution to that problem.

The district court examined the intrinsic record and determined that "[t]he claims only recite present-tense conditions … transferring occurs when subscriber units *are* unable to communicate directly; it does not say that transferring also occurs when subscriber units *were* unable to communicate at any point in the past." A59 (emphasis in original).  The district court noted that it "makes no sense to link the capability of transfer to an inability to communicate that happened at an undefined time in the past." *Id*.

The district court also agreed with Appellees that "[n]othing in the claims, or in the specification, contemplates a role for the user in affirmatively selecting one path over another." *Id*.  Instead, the claims "recite a simple 'if, then' automatic

18

switching … [t]hey do not suggest an apparatus generally designed to switch at the user's whim." *Id*.  The court found that, "the user's own action cannot itself cause the condition, if that condition does not otherwise obtain." A60.

Indeed, with respect to the user intervention issue, EON admitted at the *Markman* hearing that what was "new and different" in the '491 Patent was the ***structure that was disclosed for selecting the communication path***. A331. EON agreed that "the patent is ***agnostic to the intent of the user***. It is concerned with ***whether the subscriber unit*** is receiving a signal from the network or if the subscriber unit is unable to communicate." A300 (emphasis added).

In light of the above, the district court construed the conditional "if" claim terms for the apparatus claims as follows:

| Claim Term | The District Court's Construction |
|---|---|
| "transferring … if said local subscriber units are unable to directly communicate with said local base station repeater cell" (claim 1) "transferring … if said subscriber units are unable to communicate directly with said digital transmitter" (claim 12) "transferring … if said at least one subscriber unit is unable to communicate directly with a local base station repeater cell" (claim 13) | The system is binary, meaning the subscriber unit either directly communicates with the base station repeater cell or the modem. The "transferring function" of the modem is conditioned on whether the subscriber unit is unable to directly communicate with the local base station repeater cell. |

*See* A63, A65.

19

**(b)** **The "If Said" Terms in Method Claims 5 and 17 Include Both a Binary Limitation and a Conditional Limitation**

With respect to the method claims, the district court again found that the claims required both a "binary" limitation and a "conditional" limitation. A61-62. In that regard, the court largely adopted Appellees' proposed construction, modifying it only to not "imply that the only products that fall within the scope of the claim are those that constantly re-determine signal reception." A62. With this clarification, the district court adopted a modified version of Appellees' proposed construction as follows:

| Claim Term | The District Court's Construction |
|---|---|
| "if said subscriber unit is receiving a signal from said local base station repeater cell, performing the steps of …" (claims 5, 17)<br><br>"if said subscriber unit is not receiving a signal from said local base station repeater cell, performing the steps of …" (claims 5, 17 | The method steps listed after "if said subscriber unit is not receiving a signal from said local base station repeater cell, performing the steps of" are not performed if the subscriber unit is determined to be receiving a signal from said local base station repeater cell. Using the modem to communicate regardless of whether there is signal reception does not fall within the scope of the claim. |

A63, A65.

**2.** **The "Network Hub Switching Center" Is Part of the Claimed Network**

The district court encapsulated the dispute between the parties over the NHSC term as "***whether the scope of these claims encompasses a switching***

20

*center that is not part of the* [cellular] *network*." A49 (emphasis added).[5] So, the basic issue before the district court was whether the "network hub switching center" must be part of the cellular network.

The district court found the recital in the intrinsic record of a "hub switching center for routing communications" from subscriber units "served by a base station" was a "strong indication" that the NHSC is part of the cellular network. A51-52. The district court also found that the intrinsic record did not contemplate "a switching center that serves any cells anywhere in the world." A51.

Finally, the district court rejected EON's arguments that Appellees' proposed construction was improper because "there are embodiments in which the switching center communicates only with a subscriber unit because there is no local base station cell in the area." *Id*. The district court found that a switching center could still be construed as an object that performs the switching functions for a particular group of cells or units (i.e., as part of the cellular network), "even if in one particular embodiment the switching center happens temporarily to not be connected to those units." *Id*. The district court then adopted the following construction of the "network hub switching center" term:

---

[5] In the Summary Judgment Order, the district court explained that it used the word "network" in the foregoing statement from the Claim Construction Order to mean a cellular core network. A29.

| Claim Term | The District Court's Construction |
|---|---|
| "network hub switching center" (claims 1, 13, 17) | A switching center that performs the switching functions needed for operation of the subscriber units in the group of cells that the switching center services. |

A65.

### B. The District Court Reversed its Holding that the Switching Means Term is Indefinite Because EON Argued that the Claimed Subscriber Unit Selects Path A or Path B

EON filed a Motion for Leave to File a Motion for Reconsideration and Clarification of *Markman* Order, A445-454, seeking reconsideration of, among other things, the district court's construction of "network hub switching center" and its separate finding that claims 1 and 13 were indefinite based on their use of the "switching means" means-plus-function limitation, which it found lacked corresponding structure in the specification.[6]  The district court denied leave for reconsideration of the network hub switching center term but granted leave with respect to its indefiniteness finding and its construction of the "modem communicatively coupled" term.  A750-751.

In the Motion for Reconsideration, EON urged the district court to revisit its indefiniteness holding, arguing that the term "switching means" in the '491 Patent

---

[6] EON did not pursue a motion to reconsider the Court's construction of the conditional "if" terms.  A445-454.

22

is definite because the patent discloses how the **subscriber unit** selects Path A or Path B, rather than the user making that selection. A775-761. On the basis of those arguments, the district court reversed its prior ruling that claims 1 and 13 are indefinite. A835-840.

### C. The District Court Granted Summary Judgment Because the Accused Mobile Handsets Do Not Switch from Path A to Path B Based on the Required Condition and Because the Accused Third Party Web Servers Are Not Network Hub Switching Centers

On February 5, 2014, Appellees[7] filed their Motion for Summary Judgment. Appellees argued that they were entitled to summary judgment on all claims because:

(1) "the accused subscriber units do not switch from Path A (i.e., accused cellular path) to Path B (i.e., accused Wi-Fi or accused femtocell path) based on the required condition" and thus, "the conditional 'if' limitations of system claims 1, 12, and 13 and of method claims 5 and 17 are not met as a matter of law";

(2) femtocells are cellular base stations and not "modems" within the architecture of the accused networks; and

---

[7] MSI did not join the other Appellees in the summary judgment motion due to on-going settlement discussions with EON; however, MSI is only alleged to indirectly infringe the asserted claims of the '491 patent based on the direct infringement allegations as to Sprint and U.S. Cellular and was granted final judgment of non-infringement. *See* A3018-3044; A34-35. Further, EON has not contested MSI's entitlement to judgment on those grounds and has thus waived its right to appeal this issue.

(3) the accused ***third party*** network operation centers and data servers (i.e., web servers) are not network hub switching centers of the accused cellular networks.  A845-846.

The district court granted summary judgment for Appellees on issues (1) and (3) and found it unnecessary to address issue (2).  A16-17.

### 1.    The District Court Found that the Accused Networks Do Not Meet the Conditional "If" Limitations

The district court summarized its reasons for granting summary judgment to Appellees as follows:  "[i]n the accused networks, cellular phones transfer to a modem-based Wi-Fi connection whenever there is a Wi-Fi connection, regardless of whether there is or is not an available cellular connection."  A11.  The court explained "it is undisputed that the handsets in the accused networks switch from cellular to Wi-Fi regardless of whether cellular service is available" (A18), and that "the accused handsets transfer when there is a femtocell-based communications path, rather than when there *isn't* a cell-tower communications path" (A22 (emphasis in original)).  For these reasons, the accused networks did not meet the condition present in all of the independent claims.

(a)     **Network/System Claims 1, 12 and 13 (and Their Dependents) Were Not Infringed Because Use of the Accused Modems is Not Conditioned on Unavailability of the Accused Cellular Network**

For the network and system claims, the district court found that the type of user involvement that would be permitted under the claims was "irrelevant" to the issue of infringement because "[it] remains the case that" for the accused devices "the transferring [through the modem Path B] is not conditioned on the unavailability of cellular service." A18-19. In summary, the district court found that, *even allowing for the types of user involvement relied upon by EON in its infringement theories*, the accused systems did not operate in the manner required by the claims.

For the same reason, the district court found (*see* A19) that the evidence EON provided in response to Appellees' motion—"documentary evidence *illustrating user preferences in choosing to associate* with a Wi-Fi access point and connect to Wi-Fi to resolve coverage issues" (A869 (emphasis added))—did not change the court's conclusion. The relevance of the evidence of handset users first configuring the handset to connect to Wi-Fi, such as by approving the connection to a particular Wi-Fi network and entering a password if necessary or otherwise manually connecting to Wi-Fi, was "foreclosed by the 'conditional limitation' the [c]ourt has construed the system claims to contain." A19. In other words, EON's infringement theory erroneously attempted to capture a system

where Path B is used "dependent upon other factors" rather than the claimed condition of being "unable to directly communicate with the local base station repeater cell." *Id.*

Similarly, with respect to femtocells, EON did not identify any evidence to refute the undisputed fact that, once installed, "the accused handsets transfer when there *is* a femtocell-based communications path, rather than when there *isn't* a cell-tower communications path." A22 (emphasis in original). As the district court held, EON's allegations amounted to an argument that "when a user discovers she is not getting good cellular service in an area, and calls a femtocell provider to install femtocells, the user and the provider have, through those actions, become part of a 'system' that the Patentee invented for assessing signal strength and transferring between communications paths." A22. The court concluded that these actions were, as a matter of law, not part of the system the '491 Patentee invented. A22.

> **(b)    Method Claims 5 and 17 (and Their Dependents) Were Not Infringed Because There is No Direct Infringer and the Conditional Requirement is Not Met by the User**

With respect to the method claims, the district court granted summary judgment of non-infringement for at least three reasons. First, the district court found that there is no direct infringer. Because EON's infringement theory relied on end-users performing the first method step of "determining whether" the

subscriber unit "is receiving a signal," none of the Appellees could be direct infringers because, under that scenario, no entity performed each method step. A24. And because EON admitted that it had made no allegation of divided or joint infringement, A1061-1062, and EON had identified only the network operators (and not the end users) in its claim charts as performing certain of the claimed method steps (such as the "transferring" steps),[8] EON had not preserved a viable infringement argument that was supported under the law for the method claims. A24-26.

Second, even allowing a role for the user as proposed by EON, the district court found that "EON's view of claim scope is also foreclosed by the Court's construction that the transferring steps 'are not performed if the subscriber unit is receiving a signal,' and that '[u]sing the modem to communicate regardless of whether there is signal reception' falls outside of the scope of the claimed method." A27. Put differently, as with the system claims, the district court found that EON's theory of infringement did not satisfy the conditional requirements of the claims regardless of any role for the user proposed by EON.

---

[8] As noted above, while EON alleged in its Patent Local Rule 3-1 statement that Sprint and U.S. Cellular's end-users directly infringe by "making and using" infringing two-way networks (A2176-77), EON's operative claim charts for Sprint and U.S. Cellular did not include contentions about how the Sprint or U.S. Cellular subscribers "use" the entire infringing method. A2846-2908.

Third, the district court found that EON's theory of infringement, which depended on the user making a determination of cellular impairment in the past, violated the express requirement of the claims that the modem transferring steps be conditioned on the present-tense condition of not receiving a signal, "not because of some condition that obtained in the past." A27.

### 2.    The District Court Found that Web Servers Are Not Network Hub Switching Centers

Although the district court determined that Appellees were entitled to summary judgment of noninfringement against all asserted claims and their dependents based upon its analysis of the conditional "if" claim terms, it also found that Appellees were entitled to judgment of noninfringement on claims 1, 13 and 17 for the additional reason that the accused third-party web servers were not "network hub switching centers" as construed by the district court.[9] A28-29.  In finding for Appellees concerning the "network hub switching center" issue, the district court noted that according to its claim construction, the NHSC is part of the "cellular core network," not "something as expansive as the Internet." A29. Regardless of ownership (such as whether they were somehow "related to" the

---

[9] EON's limited allegations that relied on components within the cellular core network as corresponding to the NHSC were not the subject of the motion for summary judgment with respect to the NHSC term, although they were covered by the conditional "if" grounds for summary judgment.

cellular networks as EON claimed), web servers did not fall within the scope of the term "network hub switching center" as construed by the district court. *Id.*

### 3. The District Court Found that EON's Doctrine of Equivalents Theories Failed to Address the Conditional Requirement

Finally, the district court rejected EON's doctrine of equivalents theories because "all of EON's DOE contentions are foreclosed by the Court's view of claim scope." A30. With respect to femtocells, the district court found that, although femtocells are often deployed in situations where there is a weak cellular signal, the accused mobile handset's transferring function is still conditioned on the availability of the femtocell signal rather than the unavailability of the cellular signal. *Id.*

Likewise, with respect to EON's Wi-Fi related allegations, the district court agreed with Appellants that "none of EON's equivalency theories addressed the fact that the user is unable to condition the handset's use of Wi-Fi on the absence of a cellular path, the deficiency of a cellular path, or any aspect of the cellular path." A30. Because EON's equivalency theories would "entirely vitiate" the conditional limitation of the claims, there was no fact issue on the doctrine of equivalents theory. A30-31.

# SUMMARY OF ARGUMENT

The district court granted summary judgment of non-infringement based on an uncontested, fundamental fact about the accused networks: The accused mobile handsets operate in the exact opposite of the manner required by the patent claims. The accused handsets "prefer" Path B and communicate via an available Wi-Fi or femtocell path whenever it is available, regardless of the availability of the Path A cellular network. EON does not contest this undisputed point. Instead, EON argues that it is an act of infringement when the user of a handset *decides that his or her cellular service is unsatisfactory and, as a result, enables the use of Path B by providing a femtocell or Wi-Fi connection*. The claims cannot bear such an erroneous claim scope. But even if they could, the accused systems cannot infringe because the user cannot force the accused systems to use Path B only if Path A is unavailable, given that the accused handsets work the opposite way by preferring Path B instead of Path A.

Further, the district court properly construed the NHSC term to be a component within the claimed network of local base station repeater cells. Therefore, the district court properly granted summary judgment of non-infringement as to all theories of infringement that depended on third-party web servers that are not part of the cellular network to meet the NHSC limitation of independent claims 1, 13 and 17.

## <u>STANDARD OF REVIEW</u>

This Court reviews both the district court's grant of summary judgment and any issues of claim construction (to the extent implicated) *de novo* on appeal. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1445, 1456 (Fed. Cir. 1998); *Leever v. Carson City*, 360 F.3d 1014, 1017 (9th Cir. 2004). Infringement, either literal or under the doctrine of equivalents, is a question of fact, *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.,* 723 F.3d 1376, 1378 (Fed. Cir. 2013), and the patent owner has the burden of proving infringement, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014). "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). On appeal from a grant of summary judgment of noninfringement, the Court "must determine whether the district court correctly concluded that no reasonable jury could find infringement, after resolving reasonable factual inferences in favor of the patentee." *Id.*

The first step in claim construction is to look to the language of the claims themselves because "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004); *see also Phillips v.*

31

*AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). A disputed claim term should be construed in light of its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e.*,* as of the effective filing date of the patent application." *Phillips,* 415 F.3d at 1312. Typically, the specification "is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is therefore "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of claims." *Phillips*, 415 F.3d at 1315.

An understanding of what invention the patent inventor actually intended to claim with his patent may properly inform the claim construction process. "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Id.* at 1316 (*quoting Renishaw PLC v. Marposs Societa per Anzioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). Courts must construe claims in the manner that "most naturally aligns with the patent's description of the invention." *Id.*

## ARGUMENT

I.  **The District Court's Judgment in Favor of Appellees Should Be Upheld Because the Accused Instrumentalities Do Not Meet the "Conditional" Limitation in Any of the Asserted Claims, Either Literally or Under the Doctrine of Equivalents**

Under the proper construction of the claims at issue, the accused systems and methods cannot infringe. The claims require a preference for Path A and the use of Path B only in response to the present unavailability of Path A. The accused systems and methods operate in precisely the opposite fashion. And even if user involvement could be injected into the claims—as EON erroneously argues—the accused systems and methods *still* cannot infringe the claims at issue. The district court correctly entered summary judgment of noninfringement.

### A.  The District Court Correctly Concluded that Path B is "Conditioned" on the Present Unavailability of Path A

As the parties agree, the '491 Patent claims systems and methods where the use of Path B, the modem path, is ***expressly conditioned*** on the subscriber unit being unable to communicate with (for the system claims) or not receiving a signal from (for the method claims) the base station repeater cell. *See* A229 ("There is no dispute the claimed structure requires the capability of allowing modem use if the subscriber unit is 'unable to communicate' with the WAN [cellular] path."); A231 ("EON acknowledges the claimed methods … contain conditional elements."); *see also* EONBr12-14.

33

The express and undisputed conditional requirements of the claims mandate that Path A is used *if it is available*. *See* A6, 3:40-43 ("if subscriber unit 12 is able to detect rf signals from local base station repeater cell 10 switching means assumes a default position 'Path A'"). ***Path B is selected solely if Path A is unavailable***. A6, 3:49-51 ("when subscriber unit 12 is unable to receive rf signals directly from local base station repeater cell 10, switching means 13 selects 'Path B'"). While communicating over Path B, the subscriber unit *selects Path A as soon as it is again available*. *See* A6, 4:41-56 ("by including remote receiver 16, the present invention is able to function in a standard manner as soon as subscriber unit 12 is able to receive rf signals from local base station repeater cell 10."). In other words, Path A is the "default" path. A6, 3:40-43 (referring to "default position 'Path A'").

In addition, the '491 Patent does not contemplate that the condition on the use of the modem path is met by a condition of *past* cellular impairment. Each of the independent claims recites a present tense condition: the subscriber unit "is" or "is not" receiving a signal (claims 5 and 17) or "are" unable to directly communicate (claims 1, 12, and 13). The claims recite that Path B is used "if" (not "when") the condition is presently met.[10]   Indeed, EON disclaimed any

---

[10] While EON argues that the "present-tense" condition requires "a continuing condition" for use of Path B (EONBr45), the district court did not hold that a constant-redetermination was required under the claims. *See* A59. Moreover,

34

interpretation of the claims that merely required use of the modem path "when" (as opposed to "if") the cellular path is unavailable.  During prosecution of the '491 Patent, EON disclaimed the arguably broader limitation of "when" by adding the narrower conditional limitation of "if" in an amendment for all asserted independent claims.  *See* A2731-2841 at A2813, A2817, A2812-22; A905; A912.

Importantly, EON does not contest this aspect of the district court's constructions.  EONBr15-17, 24-28, 31-46.  Therefore, the parties agree that the district court properly construed the conditional "if" claim terms to include a condition on the use of modem-facilitated Path B:  that it is used ***only if*** Path A is unavailable.

## B.    The District Court Properly Determined that the Accused Systems Do Not Infringe the '491 Patent's Claims

EON also does not dispute that the district court correctly concluded that in each of the accused Sprint, U.S. Cellular, and AT&T cellular networks, the communication by the accused mobile handsets (alleged subscriber units) over a Wi-Fi connection (Path B) is not conditioned on whether the accused handset is unable to communicate directly with, or is not receiving a signal from, a local base station (Path A), as required by the claims.  A851.  Instead, if the accused mobile handsets' Wi-Fi radios are turned on and communications are permitted with a Wi-

---

Appellees' argument is "agnostic as to whether the handsets 'constantly re-determine' signal strength."  *See* A1011.

Fi access point (i.e., if the accused Wi-Fi Path B is communicatively coupled to or capable of transmitting data to or from the accused handsets), the handsets will communicate over the available Wi-Fi Path B as long as the Wi-Fi connection remains available and regardless of the existence or strength of any cellular connection. A2196-2213; A2552-2601; A2454-2551; A2602-2690; A2691-2704; A2705-2728; A852. Thus, when the Wi-Fi radio is on, the accused Wi-Fi path becomes the default communications path for all communications that can travel over the Wi-Fi path, regardless of the availability of the cellular communications path. *Id.* EON did not cite any evidence to the contrary that creates a material dispute as to this fact. Indeed, EON's own expert admitted that, according to his testing, the accused mobile handsets communicate over Path B when a cellular signal from Path A is available. A1013; *see* A3131-3146.

EON likewise did not offer any evidence to dispute the noninfringing operation of femtocells on the accused networks. The accused cellular networks are configured so that a mobile handset uses the femtocell for communications with the network if the handset is within range of the femtocell, independent of whether or not the handset is receiving a signal from or is capable of communicating with a local base station. A852-853; A2451-2453. This dispositive fact forecloses infringement under EON's femtocell theory.

Therefore, and as the district court found, the accused mobile handsets' use of Wi-Fi is ***completely unrelated*** to and not linked to the condition of the accused cellular (Path A) network. Likewise, the accused networks are configured so that mobile handsets will use a femtocell if it is in range, regardless of the status of the accused cellular (Path A) network. The accused systems and methods operate the ***opposite*** of the claims and thus do not infringe.

## C.     EON's User-Dependent Infringement Theories Are Not Supported By the Claims

Despite the unrefuted operation of the accused networks and the undisputed conditional requirement of the claims, EON argues that the user creates an infringing network (or practices the claimed methods) when a user first decides that a cellular network signal is not sufficient and then configures Wi-Fi or obtains and turns on a femtocell. EONBr58-60. In other words, EON argues that a user's actions to ***make communications Path B available*** constitute infringement. Accordingly, with respect to Wi-Fi, the only evidence on which EON relied to show infringement were case studies and surveys regarding in what conditions Sprint ***users*** reported that they would enable Wi-Fi and other materials showing that some mobile handsets are sold with Wi-Fi turned off. *See* A876-77 (pointing to studies where Sprint users reported that they use Wi-Fi when cellular network is unavailable or reception is poor); A877-78 (arguing that, for certain handsets, a user must manually connect the phone to Wi-Fi before Path B is enabled); A879-

880 (also pointing to Sprint surveys of customers reporting the circumstances in which they use Wi-Fi); *see also* A1214-1216 (results of Sprint customer survey regarding their typical use of Wi-Fi); A1253 (expert report discussing the same Sprint survey); A880-881 (pointing to U.S. Cellular testimony that Wi-Fi ***could be used*** by subscribers as an alternative to cellular when cellular coverage problems were encountered). With respect to femtocells, EON only pointed to evidence that femtocells are provided to customers in order "to resolve poor coverage issues." A870.

This Court need not even reach the issue of whether the '491 Patent covers the user-dependent theory that EON has propounded or whether the evidence EON has presented sets forth a dispute of material fact on this issue because it is undisputed that the accused systems and methods do not meet the conditional limitation of all of the asserted claims. The accused systems and methods do not use Path B in response to the unavailability of Path A. *See* Argument, Part I.B., above. The district court rejected EON's user-dependent theory in granting summary judgment for Appellees, but that was not necessary to its decision to grant summary judgment of non-infringement, because the accused networks operated the opposite of the manner recited in the claims. *See* A17-31.

Nonetheless, while the district court rejected EON's user-dependent theory, it did not hold, as EON argues, that the '491 Patent precluded any role for human

agency.   EONBr32.   The district court expressly found the opposite in the Summary Judgment Order, acknowledging that the patent does not preclude "a preliminary step through which a user can activate the system after deciding that cellular connectivity problems might make the system necessary." A20.   But the system "activation" to which the court refers is different than the user involvement on which EON relies in its infringement theory.   According to EON, this activation is not a preliminary step in setting up the accused network which later operates in an infringing manner through a mobile handset using Path B only if Path A is unavailable; ***it is the act of infringement itself*** that satisfies the determining step (of the method claims) or the conditional "if" limitation (of the system claims).

Based on its mischaracterization of the district court's Summary Judgment Order, EON urges this Court to hold that the '491 Patent claims impose no limitation on user involvement because the claims do not expressly ***exclude*** any user involvement.   EONBr33.   Putting aside that the district court did not find as EON suggests, EON's argument is incorrect under even the most basic principles of claim interpretation.   As the district court correctly determined, "the claims recite a simple 'if, then' automatic switching.   They do not suggest an apparatus generally designed to switch at the user's whim." A59.   Therefore, even if it is necessary to reach the issue of whether the claims encompass the scope of user

involvement that EON's infringement theories require, the district court's Summary Judgment Order should be upheld.

### 1.    The Claims and Specification Provide No Role for a User to Select Path B

As the district court properly found, a user's decision to select Path B is not covered by the language of the '491 Patent's claims.  Although the '491 Patent discusses the actions of the subscriber unit, it does not disclose that a user of the subscriber unit may detect the recited condition of the claims or respond to the recited condition by affirmatively choosing to use Path B.   At best, the specification only implies that a user can cause the cellular signal loss by "placing" or "positioning" the subscriber unit where cellular reception is not available, or configuring the subscriber unit to itself choose the appropriate path in those circumstances.[11]   Once the subscriber unit is "placed" or "positioned" by a user, the subscriber unit (*not* the user) selects Path A if it is available, or Path B, if Path

---

[11] *See*, *e.g.*, A6, 4:23-39 ("Referring still to Fig. 2, the present invention provides for two-way communication between local base station repeater cell 10 and subscriber unit 12 *even if subscriber unit 12 is unable to receive rf signals* directly from local base station repeater cell 10.  Thus, two-way communication between local base station repeater cell 10 and subscriber unit 12 is achieved even when *subscriber unit 12 is placed in an area which* is not yet equipped with or is not covered by a local base station repeater cell.  Additionally, subscriber unit 12 may be located within range of local base station repeater cell 10, but *may be positioned, for example, in a basement or other physical location which prevents subscriber unit 12 from receiving transmissions* from local base station repeater cell 10 over rf link 14.") (emphasis added).

A is unavailable.  *See* A6, 3:36-51 ("As shown in Fig. 2, ***subscriber unit 12 includes switching means*** such as, for example, an electronic switch 13 ***for selecting the path of communication*** between subscriber unit 12 and local base station repeater cell 10.  Specifically, in the present embodiment, ***if subscriber unit 12 is able to detect rf signals*** from local base station repeater cell 10 ***switching means 13 assumes a default position*** 'Path A.'… ***[W]hen subscriber unit 12 is unable to receive rf signals*** directly from local base station repeater cell 10, ***switching means 13 selects 'Path B'***.") (emphasis added).  The claims also clearly recite present-tense conditions, as the transferring and transmitting occurs *if* the subscriber unit is presently not receiving a signal, "not because of some condition that obtained in the past."  A27; *see* Argument, Part I.A, above.

As noted by the district court, EON has never provided any reason to believe that, despite the lack of disclosure of a "user" in the claims or in the specification, a person of ordinary skill in the art would view the claim terms as having a broad enough scope to encompass a user intentionally prompting a transfer to Path B, including a user prompting a transfer based on a past condition of cellular impairment.  A19.  Nor has EON ever pointed to anything in the '101 or '491 Patents contemplating such a role for the user.

Indeed, EON previously argued that components of the ***subscriber unit*** or network components determine whether Path A is available, pointing to the '101

Patent specification in support.    A20-21; A761; A3067-68.    In its Summary

Judgment Order, the district court found that EON's arguments in its Motion for

Reconsideration that components of the **subscriber unit** or of the network

determine whether Path A is available were inconsistent with EON's summary

judgment arguments.    A20-21.    EON now argues that despite clear statements in its

Motion for Reconsideration that the logic for selecting a communications path was

found **in the subscriber unit**, those arguments are not in tension with its current

infringement theories because they merely "sought to demonstrate that the

'switching means' term *need not* contain certain functionality and that such

functions, such as determining signal strength could be found elsewhere."

EONBr42.    In essence, EON argues that its statements in the reconsideration

motion should now be disregarded.    They should not.    That is because, as noted by

the district court, "one of the arguments EON brought in its motion for

reconsideration actually vitiated … one of its primary infringement theories."

A1132.

## 2.    The District Court Properly Analogized this Case to *American CalcAR v. American Honda*

EON also mischaracterizes the district court's Summary Judgment Order by

suggesting that the district court relied on a single case, as opposed to the intrinsic

record, to reject EON's unsupported user-dependent interpretation of the

conditional requirements of the claims.  EONBr33.  The district court expressly relied on the intrinsic record and its failure to disclose user intervention.  A19-A28.

With respect to the case cited by the district court, *American CalcAR, Inc. v. American Honda Motor Co., Inc.*, EON also is incorrect to suggest that it is not on point with the facts of this case.  651 F.3d 1318 (Fed. Cir. 2011).  In *CalcAR,* this Court construed a claim containing the terms "in response to" and "when" and upheld the trial court's decision to construe the term to contain a limitation that excludes user interaction between the condition and the response because "the specification fails to disclose any embodiment that requires any type of user interaction prior to identification of a service provider." *Id.* at 1339-40.

The claims at issue here, like those in *CalcAR*, fail to "suggest an apparatus designed to switch at the user's whim," and disclose no "embodiment that requires any type of user interaction."  A59.

EON argues that the claims at issue in *CalcAR* are factually distinct because they illustrate a "direct, unmediated relationship" between the claimed detection and identification in the patent at issue there.  EONBr38-39.  But that direct relationship also is found in the conditional requirements of the claims of the '491 Patent.  As the district court found, the "'transferring' function of the modem is conditioned on whether the subscriber unit is unable to directly communicate with the local base station repeater cell."  A63; A65.  Likewise, the method claims of

the '491 Patent clearly and directly tie the result of the "determining" step—which determines whether the subscriber unit is receiving a signal from the base station— to the transmitting steps that follow.  A63; A65; A9, 9:1-30.

Finally, EON attempts to distinguish *CalcAR* on the basis that in *CalcAR,* there was a clear disclaimer made by the patentee during prosecution of the patent-at-issue, and no such disclaimer is present in this case.  EONBr40.  However, this Court in *CalcAR* relied on the prosecution history disclaimer only to confirm that the patentee was estopped (under the doctrine of prosecution history estoppel) from claiming infringement under the doctrine of equivalents.  *CalcAR*, 651 F.3d at 1340-41 (affirming finding that patentee was barred from asserting infringement under doctrine of equivalents because of prosecution disclaimer).  This Court did not, as EON suggests, consider the impact of that prosecution disclaimer on the lower court's claim construction in *CalcAR*.  *Id.*

### 3.    EON Has Not Identified Any Reason that the Method Claims Should Be Treated Differently with Respect to the Role of the User

EON also argues that the district court erred by painting both the system and method claims with the "same broad brush."  EONBr43.  The record shows otherwise.  The district court's Claim Construction Order includes two separately-reasoned, independent sections for the "unable to communicate" (system) and "if receiving a signal/not receiving a signal" (method) limitations, as well as separate

constructions for each.  A55-62.  In the Summary Judgment Order, the district court found that EON's user-dependent theories were both unsupported by the entire record before the Court and foreclosed by its separate construction of the method claims:

> While a method claim is normally agnostic as to the user who performs the steps, here it is more than implausible that the user actions accused in this case form part of the method the '491 Patentee invented.  EON's view of claim scope is also foreclosed by the Court's construction that the transferring steps "are not performed if the subscriber unit is receiving a signal," and that "[u]sing the modem to communicate regardless of whether there is signal reception" falls outside the scope of the claimed method.

A27.

EON incorrectly argues that the district court injected the "determining" limitation of the method claims into the system claims.  EONBr44.  Rather, the section of the Summary Judgment Order that EON cites merely points out inconsistencies between EON's infringement theories and its theories on its Motion for Reconsideration.  A20-21.

### 4.    The Case Law Does Not Support EON's User-Dependent Theories

Finally, the cases that EON cites in support of its argument that "user involvement" cannot be excluded from the scope of the '491 Patent's claims do not stand for that proposition.  Those cases actually discuss and find a "role for user involvement" because the language of the method claims at issue or the

specification itself *specifically described human or user involvement as part of the patented method*, not because they failed to explicitly *foreclose* such involvement.

For example, the claims at issue in *Z4 Techs., Inc. v. Microsoft Corp.* specifically defined the method as requiring "*the user* to selectively choose either manual or electronic registration …" and thus the district court had "correctly rejected Microsoft's attempt to exclude *any* user interaction from the claims." 507 F.3d 1340, 1345-1351 (Fed. Cir. 2007) (emphasis added). Likewise, the Court in *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Inc.* found that the specification *specifically discussed* situations in which a human operator performed the "monitoring" step, including language in the specification that "monitoring torque conditions … *permits an operator of apparatus* according to the present invention *to initially detect* whether or not the shoulder condition is achieved in making up a premium threaded connection" and that "the dynamic display unit *permits an operator to monitor progress of each connection or joint* … " 292 F.3d 1363, 1375 (Fed. Cir. 2002) (emphasis added).

Like *CalcAR* and unlike the cases cited by EON, the '491 Patent discloses *no* role for the user in the "conditional" aspects of the invention described in the '491 Patent. And *none* of the cases cited by EON stands for the novel, and unsupported, claim construction position that EON advocates in this appeal: that

without an "explicit disavowal of human intervention," all user activities are encompassed in the scope of a patent's claim. EON Br36-37. In other words, EON argues that the support in the '491 Patent for its argument that user intervention is permitted is the *lack* of support in the intrinsic record. *See* A310 (in response to district court's question about what support there is in the patent for the user intervention limitation: "And the answer is the support in the patent for the absence of user intervention is the absence of support in the patent. So, the absence of it."). In summary, the law supports the district court's construction, not EON's arguments.

### D. Even When Allowing for the User Role Proposed by EON, EON's Infringement Theories Fail for the Accused Networks

Even if EON's user-dependent theories were supportable, a user's involvement cannot make the accused networks operate in accordance with the conditional requirement of the claims. EON's infringement scenarios depend on: (1) a user perceiving that his or her cellular network is inadequate; and (2) responding to that perception by enabling Wi-Fi on their handset or installing and connecting their handset to a femtocell. EONBr24; EONBr58-59. In other words, EON's infringement scenarios depend on a user's perception that the cellular network connection is inadequate at some time *before* Path B (through Wi-Fi or a femtocell) is even in existence (i.e., at a time before the user enables the Wi-Fi or femtocell path). But the claims require a network that includes both a Path A and a

Path B, and a "subscriber unit" that can use Path B based on the present condition of Path A's unavailability.  *See* Argument, Part I.A., above.  Therefore, EON's infringement theories do not meet all of the elements of the asserted claims.

Moreover, even after the user has set up the "Path B" under EON's theories, it is undisputed that as soon ***as Path B is enabled*** (*e.g.,* a user's handset is authenticated to use a Wi-Fi connection or the user has set up his femtocell), the accused handsets ***prefer*** that Wi-Fi or femtocell path, and the user's actions cannot alter that fact.  *See* Argument, Part I.B., above.  Therefore, even if EON's user-dependent theories were supported under the claims and specification, they do not create a genuine issue of fact with respect to infringement.

## II.    EON's Argument that the District Court Failed to Consider or Ignored EON's Evidence is Contradicted By the Record

EON argues at several points in its Appeal Brief that the district court "did not consider," "disregarded," or did not "properly consider" certain evidence that EON presented below.  EONBr57-59.  However, the record is clear that the district court considered all of the evidence put forth by EON, even though some of that evidence was unsworn and inadmissible expert opinion.  *Romero v. Nev. Dep't of Corr.,* No. 2:08-cv-808, 2013 U.S. Dist. LEXIS 168736, at * 42-43 (D. Nev. Nov. 27, 2013) ("In short, for an expert opinion to be considered on summary judgment, it must be contained in a proper affidavit; courts in the Ninth Circuit 'have routinely held that unsworn expert reports are inadmissible.'"); *see also Harris v.*

*Extendicare Homes, Inc.*, 829 F. Supp. 2d 1023, 1027 (W.D. Wash. 2011); *Ridgel v. United States*, No. SACV 12-0071, 2013 U.S. Dist. LEXIS 72131, at *2-3 (C.D. Cal. May 21, 2013); *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1210-11 (D. Nev. 2008); *King Tuna, Inc. v. Anova Food, Inc.,* 2009 U.S. Dist. LEXIS 22901, 2009 WL 650732, at *1 (C.D. Cal. Mar. 10, 2009); *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3rd Cir. 1989) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n. 17 (1970)).

In fact, the district court could not have been more clear in the Summary Judgment Order that it was considering any and all evidence offered by EON in its opposition to Appellees' Motion for Summary Judgment, whether it was admissible or not: the district court squarely noted that it "consider[ed] EON's arguments **assuming *arguendo*** that its evidence is admissible."  A17 (emphasis added).

EON also argues that the district court dismissed evidence it presented of users deciding to "turn on femtocells and communicate over this alternate path" on the grounds that "a femtocell and cell tower transmit the same cellular … signals." EON Br58-59.  But the district court's Summary Judgment Order correctly stated that "[i]t is undisputed that the accused handsets transfer when there *is* a femtocell-based communications path, rather than when there *isn't* a cell tower communications path.  The handsets transfer regardless of whether there is a cell-

tower connection, and the handsets' transferring is not conditioned on the unavailability of Path A, as the system claims require." A21-22 (emphasis in original). With respect to the fact that the femtocell and the cell tower transmit the same type of cellular signal, the court simply noted that "unlike Wi-Fi, which a user can manually decide to activate after realizing that there is no cellular reception, a connection to a femtocell cannot be established manually by a handset user … [because] there is no separate antenna to turn on to seek out a femtocell connection." A22.

Finally, EON is incorrect that the district court "refus[ed] to consider" EON's theories regarding the doctrine of equivalents. EONBr61. The district court "carefully" considered EON's doctrine of equivalents theories contained in its expert reports, "[n]otwithstanding Defendants' valid objections to the admissibility of EON's expert reports." A30. But ultimately the district court properly found that "[n]one of EON's equivalency theories address the fact that the user is unable to condition the handset's use of Wi-Fi on the absence of a cellular path, the deficiency of a cellular path, or any aspect of the cellular path." A30.

In other words, EON's doctrine of equivalents theories "essentially seek to evade the limitations of the claimed method and system." *Id.*; *see also Planet Bingo, LLC v. Gametech Int'l, Inc.,* 472 F.3d 1338, 1345 (Fed. Cir. 2006) ("This court has refused to apply the doctrine in other cases where the accused device

50

contained the antithesis of the claimed structure."); *Mirror Worlds, LLC v. Apple Inc.,* 692 F.3d 1351, 1358 (Fed. Cir. 2012) ("[A]n argument that the absence of a feature is equivalent to its presence … is a negation of the doctrine of equivalents."); *Deere & Co. v. Bush Hog, LLC,* 703 F.3d 1349, 1356 (Fed. Cir. 2012) ("[C]ourts properly refuse to apply the doctrine of equivalents 'where the accused device contain[s] the antithesis of the claimed structure.'").  Likewise, the district court properly found that "installing femtocells as a response to poor cellular coverage does not meet the conditional 'if' requirement" because "a handset's transferring function is still not conditioned on the unavailability of cellular service."  A30.

## III.    There Is No Direct Infringer Under EON's User-Dependent Theories

EON alleged that the direct infringers of the '491 Patent were either (a) mobile network operators like Sprint and U.S. Cellular (and third-party AT&T in the case of Cisco's alleged indirect infringement), or (b) an end user of these systems.  *See e.g.,* A1051-1052.  But because EON failed to argue that either mobile network operators or an end user perform each step of the method claims, and because EON did not allege a theory of joint infringement, EON has no actionable infringement theories with respect to claims 5 and 17.  This is an alternative basis to affirm the district court's grant of summary judgment for Appellees on the method claims.

A method claim is directly infringed only if each step of the claimed method is performed. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008). And "a method's steps have not been all performed as claimed by the patent unless they are all attributable to the same defendant, either because the defendant actually performed those steps or because he directed or controlled others who performed them." *Limelight Networks,* 134 S. Ct. at 2117 (citing *Muniauction*, 532 F.3d at 1329-1330).

EON did not come forward with any evidence, much less evidence sufficient to create a genuine issue of material fact, as to whether any Appellee performs all of the steps of the method claims. Indeed, EON did not even argue that any Appellee undertakes the "determining" step, but rather insisted that "the jury must still resolve whether the evidence proves that *users of handsets* change communication paths if they are not receiving a signal or unable to communicate with Path A." A875 (emphasis in original); *see also id.* ("Dr. Lyon further explains how users of handsets satisfy the conditional 'if' terms … ."); A877 (explaining an allegedly infringing scenario whereby a user, after observing lack of a cellular signal, turns on the subscriber unit's Wi-Fi and associates with an available Wi-Fi signal, which "fully satisfies the conditional 'if' limitations."); A879 ("[T]he evidence shows that users connect to Wi-Fi if they have determined that the device is not receiving a signal from or is unable to communicate with a

cellular network."); A880 ("[H]andset users on US Cellular's network utilize Wi-Fi as a backup when not receiving a signal or otherwise unable to communicate via cellular Path A."). EON's theory of direct infringement before the district court and before this Court thus relies upon the fact that ***end users*** carry out at least one of the steps of method claims 5 and 17.

Assuming *arguendo* the claim scope allows for the end user to perform the "determining" step of the method claims, EON did not offer any evidence in the record that the end user performs any of the remaining method steps. For example, Claim 5 requires "transmitting outgoing data from said local base station repeater cell to said subscriber unit by directly transmitting a first outgoing data signal representative of said outgoing data from said local base station repeater cell to said subscriber unit." A8, 7:15-19. Claim 17 similarly requires "transmitting outgoing data from said network hub switching center to said subscriber unit via said local base station repeater cell." A9, 9:7-9. These steps (if performed at all) are necessarily carried out by a mobile network operator, not the user, as EON's counsel conceded. *See* A1071 ("I don't think that the human user alone without the network equipment could perform any of the steps.").

EON's reliance on a user's performance of the "determining" step of the method claims curtails its ability to proceed with its infringement case under those

claims because EON made no allegations of joint infringement in this case.[12]

A1062. Because (1) there is no single entity that performs all of the steps of the method claims, and (2) EON did not allege that multiple actors jointly infringe (and thus did not even attempt to come forward with facts sufficient to create a genuine issue of material fact as to whether either the mobile network operators or the end users direct or control the actions of the other), EON has no viable theory of direct infringement on which to tie its allegations of indirect infringement against the Appellees under claims 5 and 17.

## IV. EON's Doctrine of Equivalents Arguments Fail to Address the Conditional "If" Limitations of the Claims

Although the district court considered EON's doctrine of equivalents theories contained in its expert reports, it is undisputed that the only evidence that EON raised with respect to these theories was unsworn and would be inadmissible. A30; *see* EONBr61-63 (only citing opinions of its experts in support of its doctrine

---

[12] But even if EON had alleged joint infringement, there is no evidence to support such an allegation because EON has not shown any direction or control by either the mobile network operators or the end users upon the other as would be required under the law. *See Muniauction*, 532 F.3d at 1330; *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007). At most, mobile network operators and end users have entered into an "arms-length" relationship that does not result in direct infringement. *See, e.g., Ultratec, Inc. v. Sorenson Commc'ns*, No. 13-cv-346-bbc, 2014 U.S. Dist. LEXIS 139776, at *10 (W.D. Wis. Sept. 29, 2014) (dismissing plaintiff's claims of indirect infringement as to the asserted method claims; "[I]t is plain that plaintiffs lack sufficient evidence to raise a triable issue of fact regarding the assisted users' control over defendants.").

of equivalents arguments); *see* Argument, Part II, above.  On that basis alone, summary judgment for Appellees on EON's doctrine of equivalents theories was appropriate.

Even if EON had presented admissible evidence relating to its doctrine of equivalents theories, those theories do not address the fact that handsets will communicate over Wi-Fi without regard to the absence or deficiency of the cellular path.  A30.  EON contended at the summary judgment hearing that under its interpretation of the Patent-in-Suit, infringement under the doctrine of equivalents occurs whenever an accused handset:  (i) is not receiving a cellular signal and (ii) is simultaneously receiving a Wi-Fi signal.  *See* A1066-67 (EON's counsel argued that it would constitute an act of infringement if a device was configured to automatically use Wi-Fi anytime it was available because "it could still be true … that in each of those future instances, there's still no cell—cell coverage available.").  As explained by the district court, this theory of equivalents would vitiate an express limitation of the '491 Patent claims:  the conditional "if" requirement.  A29-31.  EON's theories "essentially seek to evade the limitations of the claimed method and system" and therefore cannot operate in "substantially the same way" as the patented invention.  A30.  *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29 (1997) ("It is important to ensure that the

application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety").

## V.    The District Court Correctly Construed the Network Hub Switching Center Term

EON argues that the construction of NHSC that the district court adopted was "based on a technical-dictionary definition," but EON misconstrues the basis of the district court's claim construction.[13]   The court expressly rejected the proposition that it should adopt a construction based on the treatise definition that EON had proposed in a prior case and instead, stated that it would "construe the term based on the intrinsic evidence."  A49-50.  While EON argues that the district court "largely adopted" Appellees' proposed construction, EON did not offer any proposed construction for the NHSC term as an alternative for the district court to consider.  A49.

Moreover, the thrust of the district court's construction is that the NHSC must be a switching center that is part of the cellular network.  This construction is fully supported by the intrinsic record.  The '101 Patent, which is incorporated by

---

[13] Moreover, there is no *per se* rule against using dictionary definitions in claim constructions if consistent with the intrinsic record.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1322-23 (Fed. Cir. 2005)("[W]e do not intend to preclude the appropriate use of dictionaries."); *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584 n. 6 (Fed. Cir. 1996) ("Judges … may … rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."

reference into the '491 Patent specification, discloses that the base station repeater cells are connected to communicate together and under the control of the cellular switching center.  A1096-97, 4:67-5:12.  A patent application incorporated by reference in the '101 Patent likewise describes the switch control center as handling the switching functions within the cellular network.  *See* 1097, 5:14-27 (incorporating by reference U.S. Patent Application No. 07/889,626, A1986-A2027).

The fact that the district court construed the NHSC to be part of the accused cellular networks is also consistent with the meaning of NHSC that EON presented to the Eastern District of Texas in a case concerning the parent '101 Patent.  In that case, EON argued that the term "network hub switching center *means*" should be construed the same as the term "network hub switching center" because "[a] network hub switching center is a well understood structural element in hierarchical networks such as described in the inventions."  A200; A2144-2145.  In support of this position, EON likened the network hub switching center to a cellular "mobile switching centre."  Specifically, EON directed the court to a cellular treatise which described the "mobile switching centre" as something that "perform[] all of the switching functions needed for the operation of the [subscriber equipment] in the group of cells it services."  A200; A2032-33.  EON further cited to a treatise for the proposition that "switching elements" in a cellular

network were called by a number of names or acronyms. A2144. In other words, EON previously argued that the NHSC was understood to be, and was well-known as, part of a cellular network, and the Eastern District of Texas adopted that interpretation. *See also* A3198-3200 (adopting EON's arguments about the network hub switching center terms).

Rather than argue on appeal that the NHSC may be a third party Internet server independent of any cellular network as it did at summary judgment (A1206-1209), EON now argues that the NHSC and the base station repeater cells need not have any "relationship." EONBr48-52. This unsupported position is divorced from the intrinsic record and the claims, and allows for boundless interpretations of what constitutes a "network hub switching center" as used in the patent. This argument is also belied by EON's past admissions to other courts and to the Patent Office in reexamination proceedings related to the '101 Patent to the effect that the network hub switching center is that component in the network that allows base stations in different geographic areas of the network to communicate with one another. *See* A2063-63 ("EON's statement in reexamination merely distinguished a distributed system, where communication from city-to-city related to two different network control centers, from a ***network hub switching center that routed communications between repeater cells in two different areas***.") (emphasis added); A2084-2128. The district court appreciated this issue and found

(correctly) that the NHSC had to be a part of the cellular network that includes the base station repeater cells with which the subscriber units could communicate, not "a switching center that serves any cells anywhere in the world." A51.

Similar to the claim construction briefing below, EON "provides little reason to oppose the concept that the switching center relates to a particular group of cells that it services." A51. Other than engaging in grammatical exercises for no apparent end,[14] EON relies heavily on the embodiment of FIG. 3 and argues that the claims and specification show that the base stations and the network hub switching center have no "mandatory relationship." EONBr48-50. First, communications in the cellular network would simply not be possible without a relationship between the base stations and the NHSC. That is, as described above, the '491 Patent (through the description it incorporated from the '101 Patent) makes clear that the NHSC connects base station to base station in the network and allows communications between subscriber units in different base station areas. Clearly, there is a mandatory relationship between the NHSC and the base stations.

Second, in the embodiment of FIG. 3 on which EON heavily relies, the fact that the subscriber unit may temporarily be in a geographic area that does not have

---

[14] *See* EONBr51 (arguing that the phrase "served by a base station" modifies "subscriber units at various geographic locations" despite the fact that the district court *similarly found* that the claim recited "'hub switching center for routing communications' from subscriber units 'served by a base station'").

a base station does not illustrate that the NHSC is not connected to and services base stations in other areas of the network. Indeed, the embodiment of FIG. 3 (and claim 13) expressly contemplate the presence of base stations in the network. *See* A7, 5:41-47 (describing modem being adapted to communicate with a base station through line 34 when the subscriber unit is proximate to a base station); A8, 8:51-54 ("said modem also adapted for communicating with said local base station repeater cell if communication therebetween is not otherwise prevented"); A4, Fig. 3 (illustrating connection from modem through line 34 to base station).

EON also argues that the district court "impermissibly read preferred embodiments" out of the claims by limiting the NHSC to being part of the accused cellular network. EONBr54. In support, EON points to the disclosure of the "public switched network" connecting the modem and the local base station repeater cell or the modem and the NHSC, and argues that the disclosed "public switched network" need not be part of the cellular network. EONBr55-56. But the issue is not whether the publicly switched network (*e.g.*, PSTN) is part of the cellular network. Rather, the issue is whether something called a "network hub switching center" is part of the cellular network that contains the base stations that communicate with the subscriber units. The answer is clearly "yes."

EON is wrong when it argues that the district court's construction of NHSC "creates an exclusion based on the accused instrumentality." EONBr53. The fact

that EON's contention that third party Internet servers are excluded under the district court's interpretation of the NHSC claim scope does not mean that the court used "the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language." *Wilson Sporting Goods, Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006). The district court went to great pains to explain that it was not using the accused products to inform its claim constructions but only "as is necessary to understand the scope of the parties' dispute" over the claim terms. A44.

Indeed, the district court did not frame the issues as a dispute over whether specific ***accused*** Internet servers were within the scope of the claim. Rather, the district court framed the issue as a "dispute over whether the scope of these claims encompasses a switching center that is not part of the [cellular] network" and observed that this particular issue was "not before the Texas Court when it declined to construe the term." A49. The court also exhaustively detailed the intrinsic support for its NHSC construction, all of which was independent from any accused instrumentality. A49-52.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons set forth above, the district court's judgment should be affirmed.

Respectfully submitted, this 3rd day of November, 2014.

**DUANE MORRIS LLP**

*/s/ L. Norwood Jameson*
L. Norwood Jameson
Matthew S. Yungwirth
Alison Haddock Hutton
John R. Gibson
1075 Peachtree Street, Suite 2000
Atlanta, Georgia  30309
Telephone:  404.253.6900
Facsimile:  404.253.6901

Joseph A. Powers
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone:  215.979.1842
Facsimile:  215.689.3797

*Counsel for Defendant-Appellee*
*Cisco Systems, Inc.*

**SIDLEY AUSTIN LLP**

*/s/ Bryan K. Anderson*
Bryan K. Anderson
Ashish Nagdev
1001 Page Mill Rd., Bldg. 1
Palo Alto, CA 94304
Telephone: 650.565.7000
Facsimile:  650.565.7100

Ryan C. Morris
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: 202.736-8000
Facsimile:  202.736.8711

Richard John O'Brien
One South Dearborn
Chicago, IL 60603
Telephone: 312.853-7000
Facsimile:  312.853.7036

*Counsel for Defendant/Appellee*
*U.S. Cellular Corporation*

**KILPATRICK TOWNSEND & STOCKTON LLP**

*/s/ Steven Moore*
Steven Moore
Two Embarcadero Center, 8th Floor
San Francisco, CA 94111
Telephone:  415-273-4741
Facsimile:  415-576-0300

Carl Elliott Sanders
1001 West Fourth Street
Winston-Salem, NC 27101

Christopher Schenck
1420 Fifth Avenue
Seattle, WA 98101
Telephone:  206-467-9600
Facsimile:  206-623-6793

Frederick Lee Whitmer
1114 Avenue of the Americas
21st Floor

Telephone:  336-607-7300            New York, NY 10036
Facsimile: 336-607-7500             Telephone:  212-775-8773
                                    Facsimile:  212-775-8800

*Counsel for Defendants-Appellees*
*Motorola Solutions, Inc. and Motorola Mobility LLC*

**K&L GATES LLP**

*/s/ John J. Cotter*
John J. Cotter
V. Raman Bharatula
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone:  617.261.3178
Facsimile:  617.261.3175

*Counsel for Defendant/Appellee*
*Sprint Spectrum, L.P.*

**AKIN, GUMP, STRAUSS, HAUER &
FELD, LLP**

*/s/ Fred I. Williams*
Fred I. Williams
Suite 1900
300 West Sixth Street
Austin, TX 78701
Telephone:  512.499.6200
Facsimile: 512.499.6290

Eric Joseph Klein
Todd E. Landis
Suite 4100
1700 Pacific Avenue
Dallas, TX 75201
Telephone:  214.969.2800
Facsimile: 214.969.4343

*Counsel for Defendant/Appellee*
*HTC America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2014, I electronically filed the

**INITIAL BRIEF FOR DEFENDANTS-APPELLEES CISCO SYSTEMS, INC., HTC AMERICA INC., UNITED STATES CELLULAR CORPORATION, SPRINT SPECTRUM, L.P., MOTOROLA SOLUTIONS, INC., AND MOTOROLA MOBILITY LLC** using the Court's Case Management / Electronic Case Filing system, which will send a notification of such filing to all registered participants.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, within the time provided in the Court's rules.

Dated:  November 3, 2014

DUANE MORRIS LLP

*/s/ Alison Haddock Hutton*
L. Norwood Jameson
Matthew S. Yungwirth
Alison Haddock Hutton
John R. Gibson
1075 Peachtree Street, Suite 2000
Atlanta, Georgia  30309
Telephone:  404.253.6900
Facsimile:  404.253.6901

Joseph A. Powers
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone:  215.979.1842
Facsimile:  215.689.3797

*Counsel for Defendant-Appellee*
*Cisco Systems, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedures 32(a)(7)(B) and Federal Rule of Appellate Procedure 28.1(e).

☒ The brief contains 13,973 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒ The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

Dated:  November 3, 2014

DUANE MORRIS LLP

*/s/ Alison Haddock Hutton*
L. Norwood Jameson
Matthew S. Yungwirth
Alison Haddock Hutton
John R. Gibson
1075 Peachtree Street, Suite 2000
Atlanta, Georgia  30309
Telephone:  404.253.6900
Facsimile:  404.253.6901

Joseph A. Powers
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone:  215.979.1842
Facsimile:  215.689.3797

*Counsel for Defendant-Appellee*
*Cisco Systems, Inc.*